```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
```

PENN-AMERICA INSURANCE
COMPANY,

        Plaintiff,

v.                    //    CIVIL ACTION NO. 2:07CV22
                            (Judge Keeley)

STEPHEN C. COX, SR., HELEN DALE
MALLOW, formerly known as Helen
Dale Smith, BACKPORCH ENTERPRISES,
INC., doing business as DJ'S Out Back, and
JASON A. KUHN,

        Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

The plaintiff, Penn-America Insurance Company ("Penn-America"), seeks a declaration that a commercial general liability policy of insurance does not provide coverage to Stephen C. Cox, Sr., Helen Dale Mallow, or Backporch Enterprises, Inc., doing business as DJ's Out Back, ("the defendants"), in a civil action filed by Jason A. Kuhn ("Kuhn").[1] In that civil action, filed in the Circuit Court of Mineral County, West Virginia, Kuhn seeks damages for an alleged assault and battery that occurred at DJ's Out Back. For the following reasons, the Court **GRANTS** Penn-America's motion for summary judgment, and declares that the insurance policy at issue does not provide coverage to the

---

[1]Mr. Kuhn is also listed as a defendant in this case, and was served with the Complaint on March 25, 2007, however he has not made an appearance in this case.

defendants for any damages that may be awarded in Kuhn's civil action. Additionally, Penn-America is not required to provide a defense to the defendants in that action.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

Defendants Cox and Mallow own defendant Backporch Enterprises, doing business as DJ's Out Back, a bar/tavern establishment in Mineral County, West Virginia. At the time of the events underlying this case, Penn-America had issued a commercial general liability policy of insurance, bearing policy number PAC 6252127 ("the Policy") to the defendants. Policy, PAC 6252127, at Declarations. The Policy named Cox and Mallow, doing business as DJ's Out Back, as the insureds, and provided coverage from July 21, 2004 to July 21, 2005. Id. The Policy provided certain commercial general liability coverage of up to one million dollars ($1,000,000.00) in coverage for any one "occurrence," subject to a two million dollar ($2,000,000.00) general aggregate limit. Id.

On October 19, 2006, Kuhn filed a complaint alleging that, on or about November 26, 2004, while patronizing DJ's Outback, the defendants' employees forcibly removed Kuhn from the establishment. Kuhn states that, after forcing him outside, the employees "violently kicked and battered" him, causing a right closed tibia/fibula fracture and leaving Kuhn temporarily unconscious.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Kuhn sues the defendants in the instant action as well as "DOES I through X," the employees who allegedly assaulted and battered Kuhn, whose true names and capacities were unknown when the complaint was filed.

In Count I of his complaint, Kuhn alleges assault and battery, and seeks damages for his physical injuries, lost wages, lost child support, and punitive damages. In Count II, Kuhn seeks damages for intentional infliction of emotional distress resulting from the assault and battery. He also seeks punitive damages in this Count.

In Count III, Kuhn seeks damages for "negligence," alleging that on November 26, 2004, DOES I through X were acting as agents and employees of DJ's Outback, in their capacity as nightclub security guards. Kuhn asserts that the employees "owed a duty to the Plaintiff to perform their duties without the use of intimidation and physical abuse upon Plaintiff . . . ." He further alleges that the willful and malicious actions of the employees constitute negligence, and that, because the employees were acting within the scope of their employment at the time of the incident, through the doctrine of <u>respondeat superior</u> the defendants are liable for the damages caused by their negligence.

In Count IV, Kuhn alleges that the defendants acted negligently by failing to adequately train, supervise and control

their employees. He asserts that the defendants knew of previous wrongful acts by their employees, but took no action to ensure the safety and well-being of their patrons. Thus, Kuhn alleges that the defendants acted with willful and wanton indifference and deliberate disregard for the lives of its patrons, and he seeks punitive damages on this basis as well.

In response to Kuhn's Complaint, the defendants assert several affirmative defenses. Among other defenses, the defendants allege self-defense and "the defense of use of reasonable force to protect persons and property."

Penn-America first learned of Kuhn's allegations on September 16, 2005, when Kuhn's counsel notified Penn-America of his claim. Penn-America then notified the defendants that it would investigate Kuhn's claim. Several months later, in December 2005, Penn-America denied coverage under the Policy. Then, in April 2006, Kuhn demanded one hundred thousand dollars ($100,000.00) from Penn-America to cover his medical expenses, as well as for past and future pain and suffering. Penn-America denied Kuhn's demand.

Kuhn filed his Complaint in September 2006, and the defendants prevailed upon Penn-America to provide a defense to the action. On January 31, 2007, Penn-America agreed to provide such defense, but

did so under a reservation of rights. Penn-America then filed this declaratory judgment action on March 7, 2007.

The defendants responded to this action by filing a counter-claim, alleging that Penn-America has a contractual and implied duty of good faith to settle claims against its insureds, and further, that Penn-America has a duty to defend and indemnify its insureds in the underlying action filed by Kuhn. The defendants argue that Penn-America breached this duty, and ask the Court to find that Penn-America is wrongfully denying coverage to the defendants for the claims brought by Kuhn.

Penn-America moved for summary judgment on May 30, 2007, on the basis that, as a matter of law, the Policy does not provide coverage to the defendants for the claims in Kuhn's civil action arising out of the alleged assault and battery.

### III.   STANDARD OF REVIEW

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists "if the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 255 (1986).

In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986). The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. <u>Anderson</u>, 477 U.S. at 248.

## IV. ANALYSIS

Penn-America asks the Court to interpret the Policy to determine whether it must indemnify the defendants on the claims in Kuhn's complaint. "The interpretation of an insurance contract, including the question of whether the contract is ambiguous, is a legal determination." Syl. Pt. 2, <u>Riffe v. Home Finders Associates, Inc.</u>, 517 S.E.2d 313 (W.Va. 1999). In reviewing insurance policies, any ambiguities in the language "must be construed liberally in favor of the insured." <u>Aetna Casualty & Surety Co. v. Pitrolo</u>, 342 S.E.2d 156, 160 (W.Va. 1986). Where a provision of an insurance policy is clear and unambiguous, however, it is "not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." Syl. Pt.

1, Keffer v. Prudential Insurance Company of America, 172 S.E.2d 714 (W.Va. 1970).

In addition to the indemnification issue, Penn-America also asks the Court to determine whether it must provide a defense to the defendants. "As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." Aetna, 342 S.E.2d at 160. There is no requirement, however, that the facts alleged in complaint "specifically and unequivocally make out a claim within the coverage." Id. Furthermore, the duty to defend an insured may be broader then the obligation to indemnify; in other words, an insurer may be required to defend an insured "even though the suit is groundless, false or fraudulent." Id. Finally, "if part of the claims against an insured fall within the coverage of a liability insurance policy and part do not, the insurer must defend all of the claims, although it might eventually be required to pay only some of the claims." Horace Mass Ins. Co. v. Leeber, 376 S.E.2d 581, 584 (W.Va. 1988).

**A. The Parties' Arguments**

Penn-America asserts that the Policy contains an endorsement entitled "Assault and Battery Exclusion" which clearly and

7

unambiguously excludes coverage for damages alleged or claimed for bodily injury, personal injury, and any other damages resulting from assault and battery or physical alterations that occur in, on, near, or away from the insured's premises. Penn-America argues that this Exclusion explicitly modifies the rest of the Policy, and therefore, to the extent that it conflicts with any other language in the Policy, the Assault and Battery Exclusion controls.

Penn-America further contends that Kuhn's claims fall within the purview of the Assault and Battery exclusion, and thus it has no obligation under the Policy to provide a defense to or indemnify the defendants in the lawsuit currently pending in the Circuit Court of Mineral County, West Virginia.

The defendants contend that the Policy is ambiguous, because it contains two conflicting provisions. Specifically, defendants assert that the "Assault and Battery Exclusion" directly conflicts with the exclusion set forth in Paragraph 2, page 2, which excludes "bodily injury" or "property damage" that is expected or intended from the standpoint of the insured (the "Expected or Intended Exclusion"). An exception follows, however, providing that this exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

The defendants argue that, because they are asserting self-defense in the underlying Kuhn action, the self-defense exception to the Expected or Intended Exclusion entitles them to indemnification and a defense provided by Penn-America. The defendants ask the Court to liberally construe the ambiguity in their favor and find that the Expected or Intended Exclusion controls in this case.

The West Virginia Supreme Court has held that, under an intentional acts exclusion in an insurance policy, such as the Expected or Intended Exclusion in this case, a policyholder may only be denied coverage if they committed the act intentionally, and expected or intended the specific resulting damage. Syl. Pt. 7, <u>Farmers and Mechanics Mutual Insurance Company of West Virginia v. Cook</u>, 557 S.E.2d 801 (W.Va. 2001) (hereinafter "<u>Cook</u>"). Furthermore, where the policyholder can establish that he or she was acting in self-defense or in defense of another, the law will presume that the policyholder intended to prevent harm, rather then that they intended to cause the actual result. <u>Id.</u> at 809. Accordingly, in cases in which a claim arises from an act committed by an insured in self-defense, "the insurance company may not rely upon an intentional acts exclusion to deny coverage." <u>Id.</u> at 810.

If, as the defendants contend, the Policy in this case is ambiguous, then the Court must construe the ambiguity in favor of the claimants, and, under Cook, the defendants would be entitled to a defense by Penn-America. In addition, if the defendants could successfully establish that Kuhn's injuries resulted from acts of self-defense, Cook would require Penn-America to indemnify the defendants for any damages awarded to Kuhn.

Conversely, if, as Penn-America contends, the Assault and Battery Exception modifies the Policy, then Cook does not control, and the Court must give full effect to the plain meaning of the language of the Policy. The underlying issue, then, is whether the Policy is ambiguous, or whether the Assault and Battery Exception "clearly and unambiguously" modifies the Intended and Expected Exclusion.

**B.  The Policy Provisions**

The Policy provides commercial general liability coverage, which includes indemnification and defense for bodily injury and property damage. The Policy states:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.  Insuring Agreement
    a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property

>   damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have not duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>   . . .
>
>   b.  This insurance applies to "bodily injury" and "property damage" only if:
>
>   (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";
>
>   (2) The "bodily injury" or "property damage" occurs during the policy period; and
>
>   (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.
>   . . .

There are several "exclusions" listed in the Policy, including an "Expected or Intended Injury" exclusion. This exclusion states:

This insurance does not apply to:

a. **Expected or Intended Injury**

Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

An addendum is attached to the policy, however, which reads:

**ASSAULT AND BATTERY EXCLUSION**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART
COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE
LIABILITY
COVERAGE B - PERSONAL AND ADVERTISING INJURY
LIABILITY
COVERAGE C - MEDICAL PAYMENTS
COMMERCIAL PROFESSIONAL LIABILITY COVERAGE PART**

In consideration of the premium charged, it is hereby understood and agreed that this policy will not provide coverage, meaning indemnification or defense costs for damages alleged or claimed for:

"Bodily Injury," "Property Damage," "Personal and Advertising Injury," Medical Payments or any other damages resulting from assault and battery or physical altercations that occur in, on, near, or away from the insured's premises;

1) Whether or not caused by, at the instigation of, or with the direct or indirect involvement of the insured, the insured's employees, patrons or other persons in, on, near or away from insured's premises, or

2) Whether or not caused by or arising out of the insured's failure to properly supervise or

>   keep the insured's premises in a safe condition, or
>
> 3)  Whether or not caused by or arising out of any insured's act or omission in connection with the prevention or suppression of the assault and battery or physical altercation, including, but not limited to, negligent hiring, training and/or supervision.

The Assault and Battery Exclusion clearly and unambiguously modifies the Policy. First, it is entitled "Assault and Battery Exclusion," which puts the policy holder on notice that certain claims are being excluded from coverage. Second, the exclusion states: "This endorsement modifies insurance provided under the following: Commercial General Liability Coverage Part, Coverage A - Bodily Injury and Property Damage Liability." This statement is not ambiguous; the exclusion clearly modifies sections of the Policy, including the section set out above, which includes the Expected or Intended Exclusion and its exception.

The text of the exclusion, moreover, begins with "[i]n consideration of the premium charged, it is hereby understood and agreed that this policy will not provide coverage. . . ." "Coverage" is then immediately defined as indemnification and/or defense costs. The exclusion, thus clearly and unambiguously describes the types of claims to which it applies.

Because the language of the Assault and Battery Exclusion is clear and unambiguous, it modifies the Policy, and supercedes the language of the Expected or Intended Exclusion set out in the policy. The Court therefore must apply the plain meaning of the exclusion to the claims alleged by Kuhn, to determine whether these claims fall within the ambit of the exclusion.

**C. Application to Kuhn's Claim**

In Count I of his complaint, Kuhn seeks damages for injuries he suffered as a result of the alleged assault and battery that took place outside DJ's Outback. Those damages include pain and suffering, medical bills, lost wages, lost child support, and punitive damages. The Assault and Battery Exclusion excludes coverage for claims for bodily injury, medical payments or <u>any other damages</u> resulting from assault and battery or physical altercations that occur in, on, or near the insured's premises. Therefore the Assault and Battery Exclusion precludes indemnification and defense for Count I.

In Count II, Kuhn alleges Intentional Infliction of Emotional Distress for the "extreme, outrageous and unjustified" acts which caused his injuries. Because this claim also arises from the alleged assault and battery, coverage for it is also excluded by the Assault and Battery Exclusion.

In Count III, which is titled "Negligence," Kuhn alleges that DOES I through X were acting as agents of the defendants at the time of the incident. He asserts that DOES I through X owed him a duty to perform their duties without threats and violence, and that the defendants are liable for their employees' "negligence" through the doctrine of <u>respondeat</u> <u>superior</u>. It is notable that, although Kuhn uses the term "negligence," he continues to assert that the defendants' actions were willful and malicious.

The Assault and Battery Exclusion provides that bodily injury resulting from assault and battery or other physical altercations occurring in, on or near the insured's premises are excluded, "whether or not caused by or arising out of any insured's act or omission in connection with the prevention or suppression of the assault and battery or physical alteration. . . ." If DOES I through X violated a duty to exercise non-threatening and non-violent means in ejecting patrons, as Kuhn alleges, this violation would be an act or omission in connection with the prevention or suppression of the assault and battery or physical altercation. <u>See</u> <u>Penn-America Insurance Company v. The Bar, Inc.</u>, 201 S.W.3d 91, 97 (Mo. App. W.D. 2006). Thus Kuhn's negligence claim is excluded from coverage under the Policy.

In addition, the Assault and Battery Exclusion provides that bodily injury resulting from assault and battery or other physical altercations that occur in, on or near the insured's premises is excluded, "whether or not caused by, at the instigation of, or with the direct or indirect involvement of the insured or the insured's employees. . . ."  Because Kuhn alleges that the assault and battery was an intentional attack by the defendants' employees, DOES I through X, and because the Assault and Battery Exclusion denies coverage for assault and battery or other physical altercations caused by an insured's employees, any claim arising from this incident based on respondeat superior is not covered by the Policy.

In Count IV, Kuhn asserts that the defendants were negligent in their hiring, training and supervision of the security guards employed at DJ's Outback.  Kuhn seeks punitive damages for the "willful and wanton indifference and deliberate disregard" shown to patron's lives as a result of defendant's negligence.  The Assault and Battery Exclusion expressly precludes coverage of claims alleging "negligent hiring, training, and/or supervision." This claim, therefore, is also not covered by the Policy.

**CONCLUSION**

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Because the Court finds that the Assault and Battery exclusion clearly and unambiguously modifies the language of the Policy, and because all of the claims alleged in Kuhn's Complaint fall within the ambit of the Assault and Battery Exclusion, the Court **GRANTS** Penn-America's "Motion for Summary Judgment" (dkt. no. 19).

Accordingly, the Court **DECLARES** that the commercial general liability policy of insurance, bearing Policy Number PAC 6252127, does not provide any coverage to Steven C. Cox or Helen D. Smith, doing business as DJ's Outback, for the claims asserted against them in Civil Action Number 06-C-115 filed by Jason A. Kuhn in the Circuit Court of Mineral County. Additionally, the Court **DECLARES** that Policy Number PAC 6252127 does not provide any coverage to Backporch Enterprises, Inc., doing business as DJ's Outback, because Backporch Enterprises, Inc. was not insured under that policy.

Finally, the Court **DISMISSES** the defendants' Counterclaim (dkt. no. 22) and **DISMISSES** this case **WITH PREJUDICE** from the Court's docket.

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Order to counsel of record.

DATE: October 31, 2007

**MEMORANDUM OPINION AND ORDER**
**GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE